**UNITED STATES of America,**
**Appellee,**

v.

**David CORBETT, Defendant–Appellant.**

**Docket No. 02–1365.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 16, 2003.

Decided: Feb. 5, 2004.

Marybeth Covert, Federal Public Defenders Office, Western District of New York (Timothy W. Hoover on the brief), Buffalo, NY, for Defendant–Appellant.

Stephan J. Baczynski, United States Attorney's Office, Western District of New York (Michael A. Battle on the brief), Buffalo, NY, for Appellee.

Before: WINTER, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge.

This is an appeal from the restitution obligation imposed as part of a criminal sentence. Defendant David Corbett was convicted of mail fraud under 18 U.S.C. 1341 in the United States District Court for the Western District of New York *; he was sentenced to thirty-three months in prison, followed by three years of supervised release, and ordered to pay $2,667,000 in restitution to his victims under 18 U.S.C. § 3664(f)(1). In accordance with subparagraphs (f)(2) and (3) of § 3664, the court specified a schedule for restitution payments. The schedule required Corbett to make monthly payments during the period of supervised release of "75% of the household cash flow per month," and called for completion of the payments "at least three months prior to the expiration of supervision." On appeal, Corbett contends (i) that in setting the schedule, the district court failed to consider his ability to pay as required by subparagraph (f)(2); (ii) that the schedule calling for completion of restitution three months before the end of his supervised release was excessively onerous and constituted an abuse of discretion; and (iii) that the requirement to pay "75% of the household cash flow" was impermissibly vague and onerous, and illegally reached beyond his earnings to those of his spouse. He asks that we vacate the restitution order and remand for resentencing.

## DISCUSSION

■ Corbett's first argument is that the district court failed to consider his ability to pay in setting his payment schedule, as required by 18 U.S.C. § 3664(f)(2). The statute requires that, in setting the payment schedule of a restitution order, the court consider the defendant's "financial resources and other assets," his "projected earnings and other income," and "any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). We see no basis for Corbett's claim. The trial judge stated in making the restitution order that he had arrived at the payments formula "[a]fter considering the factors set forth in 18 U.S.C. § 3664(f)(2)." We have no reason to doubt the judge's statement. *See U.S. v. Nnebe*, 353 F.3d 130 (2d Cir.2003) (holding that sentencing judges ordinarily need not make any particular statement on the record to demonstrate that they have considered the mandatory factors).

■ We also reject Corbett's argument that the court abused its discretion in scheduling the completion of the restitution payments three months before termination of the supervisory portion of the sentence, which was thirty-three months after Corbett's release from jail. Once having considered the mandatory factors specified by § 3664(f)(2), the sentencing judge is afforded very broad discretion in setting the schedule. *United States v. Ismail*, 219 F.3d 76, 78 (2d Cir.2000). The

---

* According to the plea agreement, Corbett had been president of Builders Capital and Services, Inc., a corporation in the business of making short-term residential loans to individuals. Between approximately 1994 and 2001, Corbett solicited investors for Builders Capital on false pretenses, while surreptitiously diverting some $2,667,000 to his personal use.

statute requires that the restitution obligation cover "the full amount of each victim's losses ... without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). It goes on to specify that "[a]t the request of a victim ..., the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order," that is, the full amount of the victim's loss, and that "the abstract of judgment shall be a lien on the property of the defendant ... in the same manner and to the same extent ... as a judgment of a court of general jurisdiction in that State." *Id.* at § 3664(m)(1)(B). Given these requirements of law relating to the restitution order, we can see no reason to find impropriety in the schedule calling for completion of payment just prior to the termination of court supervision. The victim in any event will have, in effect, a judgment for the full amount of the restitution and a lien on the defendant's property to protect it. *See Nnebe,* 353 F.3d at 133.

■ As for Corbett's third argument, however, we agree that a remand is required at least for clarification. The schedule of restitution set by the court required monthly payments of "75% of the defendant's household cash flow." It is not clear what the court meant by that term. There are various ambiguities. First, it is not clear whether the term "household cash flow" was meant to serve solely as a measuring rod (including his wife's income), to ascertain the amount the defendant was required to pay out of his own personal funds, or whether it was meant to serve not only to measure the size of the required payment, but also to identify its source. The defendant correctly points out that if the latter meaning was intended, the order might improperly obligate the defendant's wife to pay part (or all) of the defendant's restitution obli-

gation. We assume the court intended the former meaning. Under that interpretation, the defendant is obligated to pay solely out of his own funds, to the extent available, up to 75% of the combined household cash flow. Under no circumstances would the defendant's wife's earnings need to be used to pay the restitution. Although we believe in all likelihood that the court intended this meaning, there is no assurance the probation office would so understand it. The court should clarify.

Second, it is not clear what was meant by "cash flow." The defendant points out that unless an allowance is made for reasonable living expenses to be deducted from gross income, the restitution schedule might leave the defendant unable to provide food and shelter for himself and his family. He argues such an order would be an abuse of discretion. The government responds that the term cash flow should be construed to mean "net discretionary household income," after deduction for household expenses and taxes. An order requiring payment of 75% of gross income for restitution might prevent a defendant from providing even modest food and shelter for his family. On the other hand, unless the credit for living expenses is limited to reasonable expenses, the defendant could unreasonably diminish his restitution payments by incurring extravagant living expenses. We doubt that the court intended its order to be interpreted so as to allow either consequence. It would be useful for the court to clarify these issues on remand.

## CONCLUSION

Affirmed in part, and remanded in part for reconsideration or clarification. The district court may wish to vacate the restitution portion of the sentence and resen-

tence in a manner clarifying the ambiguities.