**UNITED STATES of America,**
**Appellee,**

v.

**Dwain LAWS, Travelle Mingo, Vincent Bowers, Lakisha Salter, Nathaniel Salters, James Nance, Defendants,**

**T'Challo Radford, aka Roy Radford, Defendant–Appellant.**

No. 00–1649.

United States Court of Appeals, Second Circuit.

Feb. 18, 2004.

Bruce R. Bryan, Syracuse, NY, for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney, for Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, NY, for Appellee.

Present: CALABRESI, F.I. PARKER, and SACK,\* Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this appeal is hereby **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

In September 1999, Defendant–Appellant T'Challo Radford was indicted on numerous charges including bank fraud, mail fraud, and conspiracy. Represented by his attorney, Alan Goldstein, Radford was arraigned and released on bail. In the months following his release on bail, Radford continued to engage in illegal activity similar to that for which he had already been indicted. In February 2000, the district court therefore granted the government's motion to revoke Radford's bail and pre-trial release. A second indictment, covering Radford's criminal activities while out on bail, was issued in March 2000.

Trial on the first indictment began in late March, and ended with a jury verdict of guilty on all thirteen charged counts.

---

\* The Honorable Fred I. Parker, who was a member of the panel, died following argument in this case. This appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

Following that conviction, Radford and the government negotiated a plea agreement with respect to the second indictment. In it, the parties agreed that, because of the "common nature of the conduct in both cases," sentencing on the second indictment should be consolidated with sentencing in the first case. Plea Agreement in *United States v. Radford*, No. 00–CR–44–A, at 1 n. 1 (W.D.N.Y., June 13, 2000).

The plea agreement (with reference to the PSR's calculation of the sentence for the crimes for which the defendant had been found guilty) stated that the combined total offense level was 27. With an anticipated criminal history category of II, Radford's sentencing range was predicted by the agreement to be 78 to 97 months' incarceration, with a fine of $12,500 to $125,000.

The plea agreement included a standard waiver of appeal in which Radford "knowingly waive[d] the right to appeal or collaterally attack any total sentence imposed by the Court in this case and 99–CR–127–A [the case for which he had been convicted at trial] which falls within or is less than the sentencing range set forth [in the agreement], notwithstanding the fact that the Court may reach that range by a Guidelines analysis different from that set forth in this agreement." *Id.* at 7. The agreement contained no provision with respect to restitution.

At sentencing, the district court adopted the PSR's calculation of Defendant's offense level at 27, and its calculation of Defendant's criminal history category at level I, for a sentencing range of 70–87 months' imprisonment. The court imposed a sentence of 87 months–80 months for all of the applicable counts in the first indictment (to be served concurrently), and 7 months (to be served consecutively) for Count 1 of the second indictment–as well as a five-year period of supervised release

and a mandatory $1,400 special assessment. The court did not impose a fine, stating that it did not believe the defendant had the ability to pay it. In addition to these, the court ordered mandatory restitution of $174,024.

Defendant now appeals his conviction and sentence. He asserts, *inter alia,* (1) that his trial attorney had conflicts of interest which require reversal of the conviction on the first indictment; (2) that he received ineffective assistance of counsel in the trial on the first indictment, in negotiating the plea agreement, and at sentencing; and (3) that the district court erred in its order of restitution.

## I.

■ We begin by asking whether, if binding on Radford, Radford's plea agreement would bar our consideration of his appeal. The district court determined at the plea allocution that the waiver provision was knowing and voluntary and therefore enforceable. We agree. Accordingly, Radford, by executing the plea agreement, waived his right to challenge his counsel's alleged ineffectiveness *at sentencing.* As in *United States v. Djelevic,* 161 F.3d 104 (2d Cir.1998) (per curiam), "despite his effort to dress up his claim as a violation of the Sixth Amendment, [defendant] in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in this plea agreement with the government." *Id.* at 107. By its own terms, Radford's plea agreement did not, however, waive his right to challenge his counsel's alleged ineffectiveness at trial due to a conflict of interest. Nor did it waive his right to challenge his restitution order as it was at best ambiguous as to whether the waiver provision meant to apply to an order of restitution. *See United States v. Ready,*

82 F.3d 551, 556 (2d Cir.1996) (the terms of a plea agreement must be construed narrowly).

## II.

Defendant first claims that his legal representation was marred by two separate conflicts of interest. We have carefully considered Defendant's arguments in the light of the Supreme Court's decision in *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), and our decision in *United States v. Blount,* 291 F.3d 201, 210–11 (2d Cir.2002), *cert. denied sub nom. Streater v. United States,* 537 U.S. 1141, 123 S.Ct. 938, 154 L.Ed.2d 838 (2003), and find them to be without merit.

Defendant also contends that, even without taking into account his attorney's alleged conflicts of interest, he was denied the effective assistance of counsel in the trial on his first indictment and in the negotiation of his plea agreement. He asserts that these claims meet the requirements of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because (1) his attorney's performance fell below an objective standard of reasonableness, and (2) Defendant was prejudiced by that inadequate performance. After examining that record we conclude that the conduct of Radford's attorney was objectively reasonable. Moreover, Radford also has failed to establish a reasonable probability that but for his counsel's alleged errors, the result of the proceedings would have been different.

Having failed to establish either that his attorney labored under a reversible conflict of interest or that the attorney provided ineffective assistance, Radford is bound to the plea agreement he accepted. Knowing and voluntary waivers of a defendant's right to appeal a sentence within an agreed Guidelines range are enforceable. *United States v. Salcido–Contreras,* 990 F.2d 51, 51 (2d Cir.1993) (per curiam); *see also United States v. Fisher,* 232 F.3d 301, 303 (2d Cir.2000). Like the agreements in *Salcido–Contreras* and *Fisher,* the agreement in the instant case stipulated an anticipated sentencing range, and explicitly waived any right Defendant might otherwise have had to appeal his sentence so long as that sentence fell within, or below, the stipulated range. And it did so regardless of the method by which the district court reached that sentence.

## III.

As noted above, the district court ordered restitution of $174,024. It additionally instructed that if the defendant, while incarcerated, is assigned to a non-UNICOR job or a job at UNICOR grade five, he must pay installments of $25 per quarter, and that if he is assigned a job with grades one through four in UNICOR, he must pay installments of 50% of his monthly pay. Moreover, the court ordered that, while on supervised release, the defendant must make timely installments at the rate of 75% of his "monthly cash flow," but not less than $100 per month. Sentencing Tr., at 73. The court further ordered that "[f]ull payment of restitution is due at least three months prior to the expiration of supervision." *Id.* Finally, in the written judgement of conviction, the court recited the above conditions, but also wrote that restitution was "due immediately." Judgment in *United States v. Radford,* Nos. 1:99CR00127–001 & 1:00CR00044–001, at 7 (W.D.N.Y., Aug. 31, 2000).

Defendant challenges the order of restitution on several grounds. He argues (1) that the court abused its discretion by ordering the restitution to be "due immediately" and in making it due "at least three months prior to the expiration of supervision," where there is no evidence that Defendant is, or will be, able to pay that lump

sum at either time; (2) that the court did not consider Defendant's financial condition, as it is required to do by 18 U.S.C. § 3664; (3) that the order "appears to make payment of the lump sum a condition of supervised release," with the result that Defendant's failure to pay could result in reincarceration based on debt; (4) that the order to pay 50% of his income while incarcerated and 75% of his monthly cash flow while on supervised release is excessive and in violation of the restriction on garnishment provisions in 15 U.S.C. § 1673; (5) that the order that Defendant pay a percentage of his monthly cash flow while on supervised release is "vague and unenforceable," App. Br. at 46; and (6) that, because the payment while incarcerated depends on which job the prison staff gives him, the order impermissibly delegates the responsibility of devising the restitution payment schedule.

### A.

■ As a threshold matter, we note that Defendant's failure to object to the restitution order at sentencing does not preclude appellate review. *See United States v. Soto,* 47 F.3d 546, 550 (2d Cir.1995) ("Because improperly ordered restitution constitutes an illegal sentence and amounts to plain error, this failure is not a bar to our review." (internal quotation marks and alternations omitted)).

As the district court correctly noted, restitution was mandatory in this case, since it was "an offense against property ... committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). Moreover, restitution is to be ordered "to each victim in the full amount of each victim's losses ... without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). "When restitution is mandatory, the *amount* of restitution can only be challenged on the ground that it does

not reflect the losses to victims." *United States v. Harris,* 302 F.3d 72, 75 (2d Cir. 2002) (per curiam) (emphasis added).

On the other hand, "[i]n reviewing an order specifying *the manner* in which a defendant must pay restitution, this Court must first determine whether the sentencing judge considered the factors specified at 18 U.S.C. § 3664(f)(2)." *Id.* at 74 (emphasis added). Those factors include "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). When considering mandatory restitution imposed under this provision, *id.* §§ 3663A, 3664, we ordinarily do not require that district courts make any particular statement on the record to demonstrate that they have considered the mandatory factors. *See United States v. Walker,* 353 F.3d 130, 134 (2d Cir.2003); *United States v. Corbett,* 357 F.3d 194, 195, 2004 U.S.App. LEXIS 1742, at *3 (2d Cir. 2004). If, however, we determine "that the record does not establish that the sentencing judge considered the factors, we must vacate the restitution order and remand the case for resentencing." *Harris,* 302 F.3d at 75. But if "we are satisfied that the required factors were considered, we then review any findings resulting therefrom for clear error, and we review the district court's choice of a restitution payment schedule for abuse of discretion." *Id.*

In addition, because restitution is part of the sentencing process, if the court orders restitution it must do so at sentencing. *United States v. Porter,* 41 F.3d 68, 70 (2d Cir.1994). And the court may not delegate this judicial function to the probation department. *Id.* at 71. This means that the

district court may not delegate the decision either as to the amount of restitution due, or with respect to the payment schedule. *See United States v. Mortimer* (*"Mortimer II"*), 94 F.3d 89, 90 (2d Cir. 1996) (vacating a restitution order that required defendant to participate in the prison's inmate financial responsibility program and make restitution payments "in accordance with the policies of that program" because, under the program, payment schedules "are not fixed according to a predetermined formula, but rather vary at the discretion of the prison staff").

Finally, in *Mortimer I*, we held that the district court had abused its discretion in requiring that the defendant pay the restitution "immediately," even where the court's language supported an inference that it had considered the defendant's financial condition in ordering restitution. *See United States v. Mortimer (Mortimer I)*, 52 F.3d 429, 435–36 (2d Cir.1995).

### B.

Guided by these statutory provisions and decisions of our court, we consider Defendant's challenge of the district court's restitution order.

■ First, because the judgment of conviction orders that the "restitution is due immediately," without any evidence to suggest Defendant was able to comply with that order, it must be vacated pursuant to *Mortimer I*. On remand, the district court must take Defendant's financial situation into account in crafting a restitution payment schedule.

Second, we agree with Defendant that the order to pay 50% of his income while incarcerated and 75% of his monthly cash flow while on supervised release must be reconsidered in the light of 15 U.S.C. § 1673. That statute states that the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.

15 U.S.C. § 1673(a). While § 1673 does not explicitly apply to court-ordered restitution, and while no court has expressly held that it does so apply, we have said that § 1673 is, at least, a relevant consideration:

[R]educing the income of a person who earns barely enough to pay routine living expenses by 15% will have a different impact than the same order imposed on a person with more income. Congress reflected such concerns when it specified that restitution orders are enforceable like civil judgments, 18 U.S.C. § 3663(h), and that civil judgments should not reach certain minimum earnings. See 15 U.S.C. § 1673 (insulating from garnishment the greater of thirty times the minimum hourly wage per week or 75% of the judgment debtor's disposable earnings).

In this case, the restitution order imposed against Giwah does not evidence such consideration. The order to pay 15% of income is not coupled with evidence that such a percentage is not unduly harsh, nor is it accompanied with a safety valve such as the terms found in 15 U.S.C. § 1673. The contrary is true. The district court's finding that Giwah lacks the "ability to pay a fine," suggests the court envisioned Giwah having only very modest earnings. Accordingly, we remand for reconsideration of the portion of Giwah's sentence which orders restitution payments in the amount of 15% of Giwah's gross earnings.

**454**

*United States v. Giwah,* 84 F.3d 109, 115 (2d Cir.1996).[1]

 Accordingly, while we do not decide today whether 15 U.S.C. § 1673 directly applies to court-ordered restitution payment schedules, we follow *Giwah* and direct that the district court should consider Defendant's financial situation in determining what particular percentage of his monthly cash flow Defendant must pay as restitution. To avoid any possible confusion, the district court should also clarify whether the "monthly cash flow" from which a percentage is assigned to restitution payments includes Defendant's gross income or some lesser amount. *See Corbett,* 357 F.3d at 196–97, 2004 U.S.App. LEXIS 1742, at *5–*7 (remanding for clarification of the term "household cash flow").

Third, we reject Defendant's remaining contentions. In particular, although the district court conditioned Defendant's payment schedule on which job he was given in prison, we find that the court itself "fixed [the payment schedule] according to a predetermined formula," and therefore did not impermissibly delegate to the prison staff the authority to make post-sentencing decisions as to either the amount of the restitution or the scheduling of installment payments.

## IV.

On review of all of Radford's other contentions, we conclude that they have either been waived or are meritless. Accordingly, we AFFIRM the Defendant's conviction and the district court's sentence of imprisonment. We, however, VACATE the district court's order of restitution, and we REMAND the case to that court for further proceedings consistent with this order.

---

**1.** We note that the subsection of 18 U.S.C. § 3663 which stated that "restitution orders are enforceable like civil judgments" was deleted in 1996 as part of the AEDPA, Pub.L. 104–132, § 205(a)(2), 110 Stat. 1214, 1230, which now directs that the Attorney General be responsible for collection and distribution of restitution payments. 18 U.S.C. § 3612(c). The deleted subsection was replaced, however, with a subsection that achieves the same result, although with an additional step. *See*

18 U.S.C. § 3664(m)(1)(B) (providing a mechanism by which a victim can request in a district court "an abstract of judgment certifying that a judgment has been entered in favor of such victim," at which point the "abstract of judgment shall be a lien on the property of the defendant located in [the state in which the district court is located] in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State").