*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

REGINA LYNNE SPEARS-EVERETT,

Defendant-Appellant.

FOR PUBLICATION
July 2, 2019
9:00 a.m.

No. 341860
Kalamazoo Circuit Court
LC No. 2013-001188-FH

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

FORT HOOD, J.

Defendant, Regina Lynne Spears-Everett, appeals by leave granted[1] the trial court's order denying her motion to modify her restitution payment schedule. We vacate the trial court's order denying defendant's motion and remand for proceedings consistent with this opinion.

## I. BACKGROUND

In 2014, a jury convicted defendant of embezzling $20,000 or more from a vulnerable adult, MCL 750.174a(5)(a). Defendant was sentenced to five years' probation, with the first nine months to be spent in jail. Defendant was also ordered to pay $169,374.18 in restitution. Defendant's restitution was to be paid back in installments of $2,830 per month beginning in September 2014. Defendant appealed her conviction to this Court, which affirmed both the conviction and the amount of restitution.[2]

---

[1] *People v Spears-Everett*, unpublished order of the Court of Appeals, entered July 3, 2018 (Docket No. 341860).

[2] *People v Spears-Everett*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2016 (Docket No. 324134).

On August 4, 2016, defendant's probation officer, Amy Hill, alleged that defendant had failed to make restitution payments. Defendant was arraigned on this probation violation on August 30, 2016. The trial court held a probation hearing on September 21, 2016, during which Hill testified that defendant, at that time, had paid only $196.99 in restitution and that she was currently only paying about $20 per month toward her restitution. Defendant testified generally about her assets, liabilities, and life events that had impacted her employment and income. Defendant stated that she was paying "what [she] could afford" but was not paying the requisite $2,830 per month. The trial court found defendant guilty of a probation violation. However, the information presented to the trial court was not sufficient for it to determine whether defendant could comply with the restitution order without "manifest hardship," so the court requested that the prosecutor schedule a debtor's examination.

A debtor's examination was held on November 9, 2016. Defendant testified that she was married to Julius Everett and that the couple had four children between the ages of 10 and 17. The family lived together in a rental home. Everett was the only person listed on the rental agreement, and it appears that he alone paid the $1,200 per month rent. Three of defendant's children were enrolled in private schools, at a cost of about $150 to $200 per month per child.

Defendant was a doctor of podiatric medicine, but her license had been suspended in 2014 after she was convicted of the offense giving rise to the order of restitution. Defendant hoped to apply for license reinstatement that week. Upon her release from prison, defendant had been employed at Pero Farms, where she earned $8.15 per hour. Defendant worked at Pero Farms until she was in a car accident in December 2015. After the accident, defendant was not able to work and she did not receive any settlements, but she began to receive a $1,200 per month personal injury benefit from her no-fault automobile insurance company. Defendant had recently started working at Meijer making $9 per hour, so she expected the $1,200 stipend to end. Defendant did not have any other source of income.

According to defendant, Everett was employed full-time as a pastor. His salary was about $4,700 per month. Everett's salary was deposited into a joint bank account with defendant, but he immediately transferred it into his personal bank account. Defendant had been sued by the estate of the embezzlement victim, and a $130,000 judgment had been entered against her individually as a result of that lawsuit. Defendant also had a $2,500 judgment against her from failure to pay a Best Buy credit card. Defendant and Everett had a joint $250,000 tax debt to the Internal Revenue Service.

The trial court held a probation violation sentencing hearing on January 31, 2017 during which Everett also testified. Everett testified that he made about $4,600 per month before taxes. Before defendant went to jail, she and Everett combined their incomes to pay their bills. After paying their monthly expenses, the couple had about $1,047 per month left to spend on clothing, food, and incidentals. Everett had to "consistently" borrow from a line of credit to "make those ends meet" while defendant was in jail. Everett borrowed about $1,000 per month while defendant was incarcerated and for a few months after her release. When defendant began working, she made about $800 or $900 per month. This helped Everett cover food and some incidentals, but he still borrowed money each month.

Defendant obtained a job at Meijer on October 31, 2016. When she began working, her personal injury benefit checks decreased. Defendant's income was about $900 per month between Meijer and the personal injury checks. Because defendant was making an income, Everett was able to borrow less from his line of credit, but he continued to borrow money to pay the bills. Defendant and Everett consistently made the $20 restitution payment monthly. A larger restitution payment was not made because there was never a surplus of money, and Everett was borrowing money to pay the bills.

Everett testified that his paycheck was deposited into a joint bank account at Fifth Third Bank because that account was associated with the line of credit that he used to borrow money. When defendant was incarcerated, Everett opened up a separate individual bank account at Fifth Third Bank. He attempted to move the line of credit to that account, but Fifth Third Bank would not permit him to do so. So, to keep the line of credit, Everett had to keep using the joint account. This was why his paycheck was deposited into the joint account and then transferred to his personal account. When defendant was released from jail, Everett continued to transfer most of his paycheck out of the joint account, but he would leave $500 to $700 in the joint account so that defendant could access that money.

The trial court issued a written opinion and order on May 10, 2017. The trial court noted that MCR 6.425(E)(3) controlled and that the trial court was tasked with determining whether defendant's compliance with the terms of her restitution order would cause defendant "manifest hardship." In its written opinion, the trial court rendered detailed findings of fact regarding defendant's employment status and history, employability and earning ability, willfulness of her failure to pay, financial resources, basic living expenses, and other circumstances that bore on her ability to pay. Ultimately, the trial court concluded that "there does not appear to have been any point in time when Defendant could have made restitution payments of $2,830 per month without a manifest hardship." Further, defendant had "technically made a good-faith effort to comply with the repayment of her court-ordered obligations considering that her initial probation officer informed her that payments of $20 per month were sufficient." The trial court then ordered defendant to pay restitution as follows:

> From June 1, 2017 onward, Defendant will be required to pay 15% of her family's gross income, or $2,830 (whichever is lesser) per month in restitution. Future analysis of "good-faith effort to comply" will be based on this calculus, not on [defendant's probation officer's] "$20 per month" directive[3] which should no longer be relied upon by anyone.

On November 9, 2017, defendant moved to modify the restitution payment schedule pursuant to MCL 780.766(12). Defendant stated that she sought this modification because the new repayment schedule impermissibly required Everett to pay some of the restitution and improperly considered the family's gross, rather than net, income. In response, the prosecution

---

[3] Defendant's probation officer testified that he had told defendant, after she informed him that she could not pay $2,830 a month for restitution, that she could make a $20 payment monthly.

argued that because defendant and Everett had comingled their incomes and expenses, there was no way for the court to determine defendant's actual ability to pay individually. The prosecution also countered that defendant had not provided any authority supporting her assertion that net income, rather than gross income, should be used in determining the schedule of payments for her restitution. The trial court heard defendant's motion on December 5, 2017. After hearing argument from both parties, the trial court found that "the language in its May 10 order unambiguously directs Defendant and Defendant alone to make restitution payments, and that the family's income is merely the best measuring rod to determine what Defendant must pay from her own funds." Further, the trial court found that defendant's gross income was "the most reasonable basis [from which] to calculate Defendant's monthly [restitution] payment." Therefore, the trial court found that the modified restitution order did not create a manifest hardship for defendant and defendant's motion was denied. Defendant now appeals by leave granted.

## II. STANDARDS OF REVIEW

"A trial court's restitution order is reviewed for an abuse of discretion." *People v Turn*, 317 Mich App 475, 479; 896 NW2d 805 (2016). "An abuse of discretion occurs when the trial court renders a decision that falls outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

We review de novo "[q]uestions of statutory interpretation[.]" *Turn*, 317 Mich App at 479. When interpreting statutes, this Court's paramount goal is to discern and effectuate the Legislature's intent. *People v Sharpe*, 502 Mich 313, 326; 918 NW2d 504 (2018).

> "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004). In so doing, we assign each word and phrase its plain and ordinary meaning within the context of the statute. *People v Kowalski*, 489 Mich 488, 498; 803 NW2d 200 (2011); MCL 8.3a. [*Sharpe*, 502 Mich at 326-327.]

This Court is precluded from reading anything into the language of an unambiguous statute that is not intended by the Legislature as reflected by its plain language. *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003).

## III. ANALYSIS

"Restitution in Michigan is afforded not only by statute, but also by Const 1963, art 1, § 24, which entitles victims of crime to restitution relief." *People v Grant*, 455 Mich 221, 229; 565 NW2d 389 (1997). Two statutes in Michigan provide authority for the trial court to order a defendant to pay restitution, the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*. and Michigan's general restitution statute, MCL 769.1a. *People v Garrison*, 495 Mich 362, 365; 852 NW2d 45 (2014). MCL 769.1a provides, in pertinent part:

> (2) Except as provided in subsection (8), *when sentencing a defendant* convicted of a felony, misdemeanor, or ordinance violation, *the court shall order*, in

addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, *that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction* or to the victim's estate.

\* \* \*

(11) *If the defendant is placed on probation* or paroled or the court imposes a conditional sentence under section 3 of this chapter, any restitution ordered under this section shall be a condition of that probation, parole, or sentence. The court may revoke probation or impose imprisonment under the conditional sentence and the parole board may revoke parole *if the defendant* fails to comply with the order *and if the defendant has not made a good faith effort to comply with the order.* In determining whether to revoke probation or parole or impose imprisonment, the court or parole board shall consider *the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.* [Emphasis added.]

A review of MCL 769.1a confirms that it is the defendant who bears the onus of satisfying the obligation to pay restitution arising from criminal conduct. See, e.g., MCL 769.1a(3) (specifying that certain requirements may be imposed on the *defendant* if the defendant's criminal conduct resulted in damage to or loss or destruction of property); MCL 769.1a(4) (directing that the order of restitution may require specific obligations of a *defendant* if the criminal conduct resulted in physical or psychological injury to the victim); MCL 769.1a(10) ("[r]estitution shall be made immediately. However, the court may require that the *defendant* make restitution under this section within a specified period or in specified installments.") (Emphasis added.); MCL 769.1a(13) ("An order of restitution is a judgment and lien against all property of the *defendant* for the amount specified in the order of restitution.") (Emphasis added.); MCL 769.1a(14) ("[a] *defendant* shall not be imprisoned, jailed or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section unless the court or parole board determines that the *defendant* has the resources to pay the ordered restitution and has not made a good faith effort to do so.") (Emphasis added.)

Additionally, MCL 780.766, a provision of the CVRA, provides, in pertinent part:

(2) Except as provided in subsection (8), *when sentencing a defendant convicted of a crime*, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, *that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.*

\* \* \*

(11) *If the defendant is placed on probation or paroled* or the court imposes a conditional sentence as provided in section 3 of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.3, any restitution ordered under this section

-5-

shall be a condition of that probation, parole, or sentence. The court may revoke probation or impose imprisonment under the conditional sentence and the parole board may revoke parole *if the defendant fails to comply with the order and if the defendant has not made a good faith effort to comply with the order.* In determining whether to revoke probation or parole or impose imprisonment, the court or parole board shall consider *the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.*

(12) Subject to subsection (18), *a defendant who is required to pay restitution* and who is not in willful default of the payment of the restitution may at any time petition the sentencing judge or his or her successor to modify the method of payment. If the court determines that payment under the order will impose a manifest hardship on the defendant or his or her immediate family, and if the court also determines that modifying the method of payment will not impose a manifest hardship on the victim, the court may modify the method of payment.

(13) An order of restitution entered under this section remains effective until it is satisfied in full. *An order of restitution is a judgment and lien against all property of the defendant for the amount specified in the order of restitution.* The lien may be recorded as provided by law. [Emphasis added.]

The CVRA specifically defines "defendant" as "a person charged with, convicted of, or found not guilty by reason of insanity of committing a crime against a victim." MCL 780.752(1)(d). Moreover, throughout MCL 780.766, the Legislature has expressly referred to a *defendant's* obligation to pay restitution. See e.g., MCL 780.766(3) (specifying the *defendant's* obligations in an order of restitution if the defendant's crime resulted in damage to or loss or destruction of property); MCL 780.766(4) (stating what the *defendant* is obligated to pay pursuant to an order of restitution "[i]f a crime results in physical or psychological injury to a victim[.]") (Emphasis added.); MCL 780.766(6) (stating that if the victim or the victim's estate gives consent, "the order of restitution may require that the *defendant* make restitution for services in lieu of money.") (Emphasis added.); MCL 780.766(10) ("[I]f not otherwise provided by the court rule under this subsection, restitution shall be made immediately. However, the court may require that the *defendant* make restitution under this section within a specified period or in specified installments.") (Emphasis added.); MCL 780.766(14) ("a defendant shall not be imprisoned, jailed or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section unless the court or parole board determines that the *defendant* has the resources to pay the ordered restitution and has not made a good faith effort to do so.") (Emphasis added.)

The applicable court rule, MCR 6.425(E) also provides, in pertinent part:

(3) *Incarceration for Nonpayment.*

　　(a) The court shall not sentence a defendant to a term of incarceration, nor revoke probation, for failure to comply with an order to pay money unless the

court finds, on the record, *that the defendant is able to comply with the order without manifest hardship and that the defendant has not made a good-faith effort to comply with the order.*

(b) Payment alternatives. If the court finds that the defendant is unable to comply with an order to pay money without manifest hardship, the court may impose a payment alternative, such as a payment plan, modification of any existing payment plan, or waiver of part or all of the amount of money owed to the extent permitted by law.

(c) Determining manifest hardship. The court shall consider the following criteria in determining manifest hardship:

(*i*) *Defendant's* employment status and history.

(*ii*) *Defendant's* employability and earning ability.

(*iii*) The willfulness of the *defendant's* failure to pay.

(*iv*) *Defendant's* financial resources.

(*v*) *Defendant's* basic living expenses including but not limited to food, shelter, clothing, necessary medical expenses, or child support.

(*vi*) Any other special circumstances that may have bearing on the *defendant's* ability to pay. [Emphasis added.]

On appeal, defendant claims that the wording of the trial court's order resulted in the invasion of her husband's financial assets and him being required to tender payment to honor her obligation to make restitution. Our review of the plain language of MCL 769.1a, MCL 780.766, as well as MCR 6.424(E)(3), supports defendant's argument. Notably, the pertinent statutes and court rule make repeated reference to *defendant's* obligation to honor a restitution obligation. Moreover, the statutes and court rule make clear that the onus is on the trial court, in matters involving potential revocation of probation, to weigh "the *defendant's* employment status, earning ability and financial resources." MCL 769.1a(11); see also MCL 780.766(11); MCR 6.425(E)(3)(c)(*i*), (*ii*), (*iv*) (emphasis added). Stated differently, the statutes and court rule make clear that Everett's income cannot be used to satisfy restitution. Accordingly, any indication in the trial court's order, even if unintentional, that Everett can be held liable for defendant's restitution payments is improper as inconsistent with statutory authority and the applicable court rule. Therefore, we agree with defendant that the trial court erred in denying her motion to modify the restitution payment schedule.

While this Court and the Michigan Supreme Court have not decided this precise issue, that being whether a trial court can require a defendant's spouse to tender financial resources to pay a defendant's restitution obligation, our conclusion is supported by federal caselaw that

defendant points to in her brief on appeal.[4] In *United States v Corbett*, 357 F3d 194, 195 (CA 2, 2004), the defendant, convicted of mail fraud, was ordered to pay restitution. The United States District Court for the Western District of New York set forth a schedule of restitution payments for the defendant, and ordered him to tender monthly payments of "75% of the household cash flow per month[.]" *Id*. As pertinent to this appeal, in *Corbett* the defendant argued that the requirement concerning household cash flow "illegally reached beyond his earnings to those of his spouse." *Id*. The United States Court of Appeals for the Second Circuit agreed with the defendant's argument and remanded for clarification of the restitution order. *Id*. at 196. Specifically, the *Corbett* Court held:

> We agree that a remand is required at least for clarification. The schedule of restitution set by the court required monthly payments of "75% of the defendant's household cash flow." It is not clear what the court meant by that term. There are various ambiguities. First, it is not clear whether the term "household cash flow" was meant to serve solely as a measuring rod (including his wife's income), to ascertain the amount the defendant was required to pay out of his own personal funds, or whether it was meant to serve not only to measure the size of the required payment, but also to identify its source. The defendant correctly points out that if the latter meaning was intended, the order might improperly obligate the defendant's wife to pay part (or all) of the defendant's restitution obligation. We assume the court intended the former meaning. Under that interpretation, the defendant is obligated to pay solely out of his own funds, to the extent available, up to 75% of the combined household cash flow. Under no circumstances would the defendant's wife's earnings need to be used to pay the restitution. Although we believe in all likelihood that the court intended this meaning, there is no assurance the probation office would so understand it. The court should clarify. [*Id*.]

While the trial court acknowledged that its May 10, 2017 order was not intended to subject defendant's husband to restitution payments arising from defendant's crime, the trial court's written directive requiring defendant to pay 15% of her family's gross income is worded in a manner that could be interpreted to require that Everett's income be used to satisfy defendant's restitution obligation. Accordingly, remand is necessary to allow the trial court the opportunity to clarify the wording of its order to expressly confirm that only defendant, solely out of her own financial resources, is to satisfy her restitution obligation.

Defendant next argues that the trial court erred when it used her gross income, rather than net income, in determining her restitution payment schedule. We disagree.

---

[4] This Court has recognized that federal court interpretations of the Victim and Witness Protection Act, (VWPA), 18 USC 3663, can be persuasive when interpreting the CVRA. *People v Gubachy*, 272 Mich App 706, 712; 728 NW2d 891 (2006).

As noted earlier in this opinion, when determining whether a revocation of probation is required as a result of a defendant not making "a good faith effort" to satisfy a restitution order, MCL 769.1a provides that "the court . . . shall consider the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay." MCL 769.1a(11). MCL 780.766(11) contains identical language. Moreover, MCR 6.425 specifies that in determining whether the defendant has incurred a "manifest hardship" in having to comply with the restitution order, the trial court shall consider "[d]efendant's employment status and history[,]" as well as "[d]efendant's employability and earning ability." MCR 6.425(3)(c)(*i*), (*ii*). Thus, the statutes and the court rule do not speak to any requirement that a defendant's net income be considered in the trial court's decision. Consequently, our review of the pertinent statutes and court rule does not support defendant's contention that the trial court is *required* to consider a defendant's net income in determining whether to revoke a defendant's probation on the basis of manifest hardship or lack of a good faith effort to satisfy a restitution obligation.

We also decline defendant's invitation to adopt a bright-line rule that requires a trial court to consider only net income. Put simply, we are not permitted to read into the text of a statute a requirement that the Legislature did not intend as reflected by the plain language of the statute. *People v Mikulen*, 324 Mich App 14, 23; 919 NW2d 454 (2018). Similarly, this Court may not "read into an unambiguous court rule a provision not included by the Supreme Court." *People v Swain*, 288 Mich App 609, 629; 794 NW2d 92 (2010). In contrast, MCL 769.1a(4)(c) states that if a defendant's felony, misdemeanor or ordinance violation "results in physical or psychological injury to a victim," a restitution order may require that the defendant "[r]eimburse the victim or the victim's estate for *after-tax income loss* suffered by the victim as a result of the felony, misdemeanor, or ordinance violation." (Emphasis added.) MCL 780.766(4)(c) contains the same language concerning "after-tax income loss." Therefore, had the Legislature intended to limit the trial court's consideration under MCL 769.1a(11) and MCL 780.766(11) to defendant's "after-tax income," it certainly could have stated its intention in the statutes. Without such an indication, we cannot read such a limitation into the statutes. We reach the same conclusion concerning the court rule given that the Supreme Court did not include such language in MCR 6.425(E)(3).

We also share the trial court's well-stated concern that if a trial court is limited to using a defendant's net income in determining a defendant's ability to pay as part of the analysis concerning "manifest hardship" required by MCR 6.425(3)(a) and (c), and whether to revoke probation pursuant to MCL 769.1a(11) and MCL 780.766(11), the process is subject to abuse as a defendant could potentially manipulate net income, using deductions for such things as a health care or retirement plan, to lower their income in an effort to evade the responsibility to pay restitution. Accordingly, because our reading of MCL 769.1a(11), MCL 780.766(11) and MCR 6.425(E)(3)(c) does not support defendant's assertion that the trial court was required to use her net income in determining her ability to pay and setting her restitution payment schedule, we are not persuaded that the trial court abused its discretion in declining to do so. *Turn*, 317 Mich App at 479.

IV. CONCLUSION

-9-

We vacate the trial court's December 19, 2017 order denying defendant's motion seeking a modification of her restitution payment schedule. The trial court's May 10, 2017 order addressing defendant's restitution payment schedule is also vacated to the extent it provides that defendant's family's income may be used to satisfy defendant's restitution obligation. On remand, the trial court is instructed to draft its restitution order in a manner that clarifies that defendant alone is responsible for paying her restitution obligation. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Kirsten Frank Kelly